IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | | |
|---|---|---|
| BAYLOR HEALTH CARE SYSTEM AND | § | |
| HEALTH CARE INSURANCE COMPANY | § | |
| OF TEXAS LTD., Individually and as | § | |
| Assignee of CHURCH UNIVERSITY | § | |
| INSURANCE COMPANY, LTD., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL NO. 3:05-CV-0701-H |
| | § | "ECF" |
| EMPLOYERS REINSURANCE | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Employers Reinsurance Corporation's Motion to

Dismiss Against Baylor Health Care System, filed December 14, 2005; and responsive

pleadings; Defendant Employers Reinsurance Corporation's Motion for Summary

Judgment, filed December 6, 2005; and responsive pleadings; Plaintiffs' Motion for

Summary Judgment, filed January 23, 2006; and responsive pleadings; and Motion for

Leave to File Sur-Reply, filed March 15, 2006.

## I. BACKGROUND

This case is a reinsurance dispute arising out of compromise and settlement of a

medical malpractice lawsuit, *Hamilton v. Baylor Medical Center at Garland* ["Hamilton

Lawsuit"].[1]   In that underlying case, the plaintiff sought damages against Baylor Medical

_____

[1]  Civ. No. DV00-03141-1, filed in the 162nd Judicial District Court of Dallas County,
Texas on or about April 27, 2000.

Center for injuries she claimed her son sustained during birth.  The Hamilton Lawsuit resulted in pre-trial settlement to the plaintiff in the amount of $10.8 million dollars.

At the time of the Hamilton Lawsuit, Plaintiff Baylor Health Care System ["Baylor"] had a self-insured retention ["SIR"] of $3.5 million and was a named insured under a policy issued by Church University Insurance Company, Ltd. ["Church"], an offshore "captive" insurance company wholly owned by Baylor.  Church later became Health Care Insurance Company of Texas, Ltd. ["HCIC"].[2]  The Church Policy was fully (100%) reinsured by Defendant Employers Reinsurance Corporation ["ERC"] per Certificate No. FCM-0604972-01-1998 ["Reinsurance Certificate"].  The dispute here is for what portion of the Hamilton Lawsuit settlement ERC is liable under the Reinsurance Certificate.

When settlement was reached in the Hamilton Lawsuit, the Church Policy paid the net of the $10.8 million settlement minus Baylor's $3.5 million SIR, or $7.3 million. ERC reimbursed only $6.3 million.[3]  Baylor and HCIC contend that under the 100% reinsurance agreement, ERC should have paid the additional $1 million.  Accordingly, Plaintiffs Baylor and HCIC now bring this lawsuit against Defendant ERC for breach of the Reinsurance Certificate; and for declaratory judgment regarding its interpretation. The parties have filed cross-motions for summary judgment.  Defendant ERC has also filed a motion to dismiss Baylor from the case.  For the reasons that follow, ERC's

---

[2] The parties do not dispute HCIC's right to pursue this action as Church's successor.

[3] ERC was also liable under the Reinsurance Certificate for a proportionate share of litigation costs, which it duly paid based on the ratio of $6.3 million to the total settlement amount.  Because Plaintiffs claim ERC owes an additional $1 million in settlement amount, Plaintiffs also sue for an additional amount to reimburse proportionate costs of litigation.

motion for summary judgment is granted.  The case being thus resolved, the Court does not reach the other dispositive motions.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  A party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The nonmoving party must go beyond the pleadings and designate specific facts creating a genuine issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  If the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).

With this summary judgment standard in mind, the Court turns to an analysis of the issues in this case.

## III.  ANALYSIS

The undisputed relevant facts are these.  The Hamilton Lawsuit, described above, did not settle at mediation.  Following mediation, the Hamilton plaintiff made a pretrial settlement demand of $12 million, which Baylor, Church, and ERC did not accept but decided to continue negotiating.

During the negotiations, Baylor, Church and ERC disagreed among themselves how much of the settlement, if reached, ERC would be required to pay under the Reinsurance Certificate.  ERC's position was that it was not required to reimburse any amount Baylor paid for punitive damages; and ERC believed that Baylor's total exposure

in the Hamilton Lawsuit -- the amount on which the settlement offers were arguably based -- included significant likelihood of such punitive damages.  ERC proposed at one point that to facilitate immediate settlement of the Hamilton Lawsuit, the parties' respective financial responsibility be determined post-settlement by a mutually agreeable means of dispute resolution.  Baylor and Church rejected that suggestion in writing.  The parties continued negotiating by email and telephone.

On October 12, 2001, John Thomas, who was general counsel for Baylor and a board member of Church, sent an email to several ERC representatives, including Scott Crockett.  That email ["October 12 Email"] reads as follows:

> Baylor and ERC have agreed this morning (10-12) that Baylor will contribute the first 500,000 toward a settlement in excess of $8.5 million, and if settlement exceeds $10 million, Baylor will contribute first $500,000 over $10 million.  So total Baylor exposure is 1,000,000 in excess of 3.5 SIR.

> ERC will contribute all amounts toward a settlement up to 12 million, except for the baylor sir and 1 miilion [sic], subject to the structure above.

> Please confirm.  Jt

Def.'s Mot., Ex. E.  In this email, Thomas was writing to acknowledge an agreement in which (as applied to the subsequent 10.8 million settlement) Baylor would contribute $1 million in excess of its SIR; and ERC would contribute $6.3 million – exactly what ultimately transpired.  Scott Crockett of ERC sent a reply with the single word: "Agreed."  *Id*.

Settlement of the Hamilton Lawsuit was reached shortly thereafter, and ERC sent its payment for $6.3 million.  Plaintiffs now contend that the check was $1 million short.

4

ERC responds, however, that the email agreement and payment constitute an "accord and satisfaction" in complete discharge of its liability under the Reinsurance Certificate. The Court agrees.

Under the law of accord and satisfaction, parties may agree to discharge a legitimately disputed, existing obligation for an agreed amount. *See Boland v. Mundaca Inv. Corp.*, 978 S.W.2d 146, 148 (Tex. App.--Austin 1998, no pet.); *Indiana Lumbermen's Mut. Ins. Co. v. State*, 1 S.W.3d 264, 266 (Tex. App.--Fort Worth 1999, writ denied).[4] An "accord" is a bargain evidenced in a new contract, either express or implied, that replaces an old agreement. *Ostrow v. United Bus. Mach., Inc*., 982 S.W.2d 101, 104 (Tex.App.-- Houston [1st Dist.] 1998, no pet.). A good faith dispute as to liability on the underlying obligation furnishes sufficient consideration, and the satisfaction is the actual performance of the new agreement. *See id.*; *Hycarbex, Inc. v. Anglo-Suisse, Inc*., 927 S.W.2d 103, 110 (Tex. App.--Houston [14th Dist.] 1996, no writ). A valid accord and satisfaction will preclude recovery on the original obligation. *Id.*; *Houchins v. Scheltz*, 590 S.W.2d 745, 750 (Tex. Civ. App.--Houston [14th Dist.] 1979, no writ).

In this case, the parties have acknowledged disagreement and unsuccessful negotiations over the scope of the Church Policy and ERC's reinsurance obligation. Based on the voluminous documents submitted to the Court in that regard, the Court finds the dispute to be *bona fide* and in good faith. Neither party disputes the authenticity of the October 12 Email or the authority of the correspondents. The email is a classic

---

[4] The parties do not dispute that Texas contract law applies.

offer and acceptance, forming a contract. *See Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.--San Antonio 1997, no writ) (setting out the requirements for contract formation).  On December 5, 2001, ERC tendered a conforming check, which Church accepted.  The elements of accord and satisfaction are thus present.

In opposition, Plaintiffs offer two principal arguments.  First, they argue that the email's intent binds them only to temporary interim funding of the settlement, with actual apportionment to be determined at a later date.  In light of the clear language of the agreement, however, that argument is unpersuasive.

To interpret the terms of a contract, the Court must determine the intent of the parties from the plain language of the contract.  *Allison v. Nat'l Union Fire Ins. Co.*, 734 S.W.2d 645, 646 (Tex. 1987).  In this case, Baylor speaks of settlement contributions, not stop-gap funding contributions, and of its total "exposure" in excess of the SIR. According to Webster, the word "exposure" means "risk of financial loss."  In the commonly used litigation context, "exposure" connotes the maximum amount a party considers itself liable to be required to pay.  The October 12 Email has no language of temporary funding, or of amounts to be determined at a later date.  It is drafted as a straightforward allocation of settlement responsibility, and the Court declines to distort it into anything else.  *See Consolidated Petroleum Partners, I, LLC v. Tindle*, 168 S.W.3d 894, 898-99 (Tex. App.--Tyler 2005, no writ) ("Parties to a contract are masters of their own choices and are entitled to select what terms and provisions to include in or omit from a contract.")

Plaintiffs' sole remaining colorable argument is that a genuine issue of material fact is raised whether ERC's $6.3 million payment was communicated to be in full

6

satisfaction of the disputed Reinsurance Certificate.  Acceptance of a payment is binding if from the surrounding facts a party "obviously should understand that a check is tendered in full satisfaction."  *Roylex, Inc. v. S&B Engineers, Inc*., 592 S.W.2d 59, 60 (Tex. Civ. App.--Texarkana 1979, no writ).  Magic words are not required.  *See City of Mesquite v. Rawlins*, 399 S.W.2d 162, 168 (Tex. Civ. App.--Tyler 1966, writ ref'd n.r.e.) (holding that failure to employ such phrases as "in full settlement" or "in full satisfaction" is immaterial where check is clearly tendered in full settlement of accord). In this case, the express agreement in the October 12 Email contract, in conjunction with the close proximity in which ERC's conforming payment was tendered, provide sufficient context for acceptance of that check to constitute satisfaction.  No reasonable juror could find otherwise.  Plaintiffs' arguments are overruled.  *See Friou*, 948 F.2d at 974 (holding that summary judgment is proper where the record as a whole could not lead a rational trier of fact to find for the nonmoving party).

Because of the accord and satisfaction the Court finds to have existed in this case, ERC has no further reinsurance payment obligation for the Hamilton Lawsuit settlement. Plaintiffs' causes of action, all predicated on such an obligation, must therefore be dismissed.

**IV.  CONCLUSION**

For the reasons given above, Defendant ERC's motion for summary judgment is **GRANTED**.  In light of the full disposition of this case thereby, all other pending motions are **DENIED AS MOOT**.  The Court's Scheduling Order, including the trial setting of this case, is **VACATED**.  Final Judgment will issue by separate order.


SO ORDERED.

SIGNED: April 17, 2006.

8